## COOPER v. SHEEPSKIN LINING CO., Inc.

District Court, S. D. New York.

June 6, 1944.

Samuel Ostrolenk, of New York City, for plaintiff.

Leon & Weill, of New York City (Harold Weill, of New York City, of counsel), for defendant.

COXE, District Judge.

This is a suit for alleged infringement of the Cooper patent, No. 2,132,399, issued October 11, 1938, on an application dated April 1, 1936, for Leather Cemented Articles.

The patent has six claims, Nos. 1 and 6 being method claims, and Nos. 2, 3, 4 and 5 product claims. All six claims are in issue.

The defenses are invalidity for anticipation and lack of invention, and non-infringement. A counterclaim interposed by the defendant for damages for unfair competition was withdrawn at the end of the trial.

The patent discloses a composite material made by uniting a layer of leather to a layer of fabric by means of a cement, the cement being applied in a fine spray to produce an air pervious end product.

The specification mentions various types of leather to which the invention may be applied, and refers particularly to the skins used in the manufacture of gloves, where, it is said, a high degree of skill is required to determine the stretching qualities of each skin before cutting. It is asserted that these stretching qualities may be controlled and a predetermined stretch obtained by suing as a backing material "a cloth specifically woven to provide a stretch in one direction." There is also mention in the specification of the use of fabric to reinforce "skivers of sheep skins, goat skins and the like," thereby producing "a final product which has the pleasant appearance of leather, and has its feel, break and softness." The cement employed is described as one "that is free of fillers or foreign matter normally causing cement to become stiff or hardened when dry, i. e., by utilizing cement in a highly pure state, it remains soft after being dried, while at the same time providing all the necessary adhering properties." This cement is further characterized as "a non-hardening cement." The method of application is stated to be "in a fine spray so that it is atomized and uniformly distributed in an extremely thin film over the leather surface to be cemented with the fabric, so that the individual globules of the cement are prevented from coagulating with each other to form a hard stiff surface * * *." Later, it is stated that the cement is sprayed through a fine nozzle, and that satisfactory results have

been obtained with a 1/32 inch nozzle and a pressure of 45 pounds per square inch.

Claims 1 and 2 read as follows:

"1. The method of manufacturing composite materials which comprises stretching a leather in one direction, spraying a cement thereon so that the cement globules are substantially equal in size to the solid part of the leather and do not block the openings in said leather, and applying to said cement coated leather a fabric, the leather, cement and fabric being so positioned that the composite material is pervious to air."

"2. As an article of manufacture a composite material comprising a layer of leather and a fabric united by a layer of cement, said cement consisting of spaced particles permitting passage of air therethrough."

Claim 3 is more specific than Claim 2 in that it calls for "a layer comprising skiver" in place of "a layer of leather." Claim 4 adds to Claim 2 the words "the composite having a substantial stretch in one direction only." Claim 5 is similar to Claim 4, except that it substitutes "a layer of fibrous material" for "a fabric," and eliminates the provision for "a substantial stretch in one direction." Claim 6 is similar to Claim 1 in that it calls for "stretching the tanned leather in one direction".

It will be seen from this analysis of the claims that method claims Nos. 1 and 6 call for stretching the leather in one direction before the cement is applied, and that product claim No. 4 contains a limitation that the composite material have "a substantial stretch in one direction only." These particular requirements of the claims obviously have reference to the manufacture of gloves where, as pointed out in the specification, it is desirable to control the stretch of the skin before cutting. The defendant, however, has no interest in the manufacture of gloves, and does not stretch the leather in one direction before applying the cement. Its method of manufacture is simply to take a skiver and tack it to a board to make it smooth; the cement is then sprayed on to the skiver, and the fabric is applied. The defendant uses cheese-cloth or any other suitable backing fabric irrespective of whether it has a stretch in one direction or not, and the resulting product does not have "a substantial stretch in one direction only." I think, therefore, that regardless of the validity of claims Nos. 1, 4 and 6 the defendant has plainly not infringed those claims.

The question remains whether any of the Cooper claims can be upheld as valid in view of the prior art showing. The closest references are the Holbrook patent No. 293,878 (1884); the Stoffel patent No. 1,170,699 (1916); the Hopkinson patent No. 1,784,523 (1930); and the Kahlmeyer patent No. 1,931,612 (1933), application filed August 3, 1931. Holbrook shows a compound fabric made by cementing split pieces of leather to cloth. His preferred cement is rubber or gutta-percha "either in solution as a cement or in a thin sheet or sheets unvulcanized, placed between the cloth and leather and united to said materials by heat." Stoffel shows the use of a spray gun for applying a layer of adhesive material to fabrics without altering the nature of the fabric. He points out that the "particles of adhesive material on reaching the fabric which they cover in a homogeneous manner and become completely dry thereon." Hopkinson shows a method of rubberizing fibrous material without substantial impregnation. He states that it was old in the art to rubberize fibrous material, such as woven sheets or leather, "by calendering, spreading, spraying or dipping, using for this purpose rubber doughs, cements, and also latex in substantially the concentration in which it is obtained from the trees." He describes his invention as consisting "broadly in coating a fibrous material with a strongly adhering but substantially superficial covering of rubber in the form of a water dispersion, and curing." He states that he has "found that by using such a thickened latex or dispersion for the coating it may be applied without substantial penetration of the fibrous material." Kahlmeyer shows a shoe upper made by combining a layer of leather with a layer of napped fabric by means of a cement. His preferred cement is a thermoplastic adhesive solution which he sprays upon the nap of the fabric in the form of a mist, thereby producing a fabric "having on the outer or free portions of its nap fibers minute discrete particles of solid adhesive."

I do not think that this prior art showing left any room for the Cooper patent. All that Cooper did was to use a spray gun.

such as shown in the Stoffel patent to spray Holbrook's rubber solution in a thin film over the leather surface to be cemented with the fabric. This surely did not amount to patentable invention even though it involved adjusting the spray gun in such a way as to deposit the cement in "spaced particles permitting the passage of air therethrough." None of the Cooper claims calls for the use of any particular kind of cement, and the specification merely states that the cement is "free of fillers and foreign matter normally causing it to become stiff or hardened when dry," and, further, that it is "a non-hardening cement." This could be any of the cements shown by the prior patents. I hold, therefore, that all of the Cooper claims are invalid for lack of invention.

There may be a decree for the defendant holding that claims Nos. 1, 4 and 6 of the Cooper patent, No. 2,132,399, have not been infringed, holding that all six claims of the patent are invalid for lack of invention, and dismissing the complaint with costs.